UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

       *Plaintiff*,

v.                                             Case No. 3:16-cr-098 (1)
                                                            Judge Thomas M. Rose

**David A. McComb, Jr.**,

       *Defendant*.

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. 36).**

---

Pending before the Court is a motion by Defendant David A. McComb, Jr. for a reduction of sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, (Doc. 36). The Government filed a response, (Doc. 41). McComb requests an order reducing his sentence to time served; or in the alternative, modifying his judgment to allow the remainder of his sentence to be served on home confinement. (PageID 143).

**I.**     **Background**

On April 6, 2016, Dayton Police officers on patrol observed Defendant David A. McComb, Jr. standing in a nuisance-abated property in Dayton, Ohio. (Presentence Investigation Report ¶ 14). When the officers attempted to contact him, McComb fled on foot. Id. While

chasing McComb, an officer deployed a taser and apprehended McComb. Id. When they patted him down, the officers recovered a Rossi .22 caliber double-barreled pistol in the pocket of McComb's pants. Id.

McComb had previously been convicted of felony offenses—including burglary, aggravated robbery (deadly weapon), and abduction—and was therefore prohibited from possessing a firearm. Id. ¶ 16. At the time of this offense, McComb was on escape status after fleeing the Riverside Police Department following an arrest for domestic violence and having weapons under disability. Id. ¶ 48

On November 10, 2016, McComb pleaded guilty to a one-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On March 27, 2017, McComb was sentenced to 77 months of imprisonment.

On August 9, 2021, McComb submitted a pro se motion for a sentence reduction. (Doc. No. 36). When he filed his request, he was serving his sentence at USP Coleman I, and had previously served part of his sentence at FCI Williamsburg.

In the motion, McComb argues that he is entitled to compassionate release due to the COVID-19 pandemic because he suffers from high blood pressure, obesity, and hypertension, which place him at risk of serious illness or death. He notes that he had previously contracted COVID-19 on March 1, 2021.

On September 2, 2021, counsel appointed to represent McComb filed a notice of intent to file a supplement to McComb's motion. (Doc. No. 38). On September 2, 2021, counsel filed a motion requesting a 45-day extension to file the supplement. (Doc. No. 39). On September 3, 2021, the Court granted the motion and set a deadline of October 18, 2021, for the filing of the

2

supplement. To date, no supplement has been filed.

According to the Bureau of Prisons inmate locator, bop.gov, McComb is now at Talbert House, the Cincinnati Residential Reentry Management field office, with a release date of July 20, 2022. At Talbert House there are no inmates or staff who have tested positive; there have been no inmate or staff deaths and the four inmates who have tested positive have recovered. www.bop.gov/coronovirus.

## II. Analysis

McComb asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so. Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a

court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020 WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in §

4

3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account

5

> the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451,

at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Moreover, "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

The Bureau of Prisons has taken significant measures to protect inmates. On March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. BOP has implemented modified operations to maximize social distancing. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities and has implemented detailed screening and quarantine protocols. See www.BOP.gov/coronavirus.

In addition, Bureau of Prisons institutions are receiving vaccine allocations and are working to make the vaccine available to staff and inmates as quickly as possible. More than 256,993 doses have already been administered to BOP staff and inmates. Facility by facility information regarding vaccinations completed is updated daily at www.bop.gov/coronavirus/. BOP reports that, at FCC Coleman, 791 staff inoculations have been completed, along with 5,025 full inoculations of inmates. See https://www.bop.gov/coronavirus/ (last visited December 1, 2021). In an effort to assist inmates who are most vulnerable to the disease and pose the least

threat to the community, BOP is also exercising greater authority to designate inmates for home confinement.

On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors. A subsequent memorandum from the Attorney General on April 3, 2020, further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. See Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020. In assessing whether home confinement is appropriate for a particular inmate, the Attorney General directed BOP to weigh numerous factors, including the inmate's medical conditions, age, crime of conviction, and conduct while in prison; conditions in the inmate's particular institution; availability of post-release transportation, housing, and supervision for the inmate; and the inmate's risk from COVID-19 if released. Prior to releasing an inmate, BOP is directed to implement a fourteen-day quarantine in order to protect the community.

Since the Attorney General's memo on March 26, 2020, BOP has placed an additional 35,011 inmates on home confinement. See www.BOP.gov/coronavirus/ (last accessed December 1, 2021). BOP's home confinement program provides a centralized, consistent mechanism for identifying prisoners for whom home confinement is most appropriate. The resulting reduction in prison population will in turn benefit all remaining prisoners. Courts should be mindful of the BOP's systematic evaluation of prisoners for home confinement in considering whether compassionate release is warranted for individual prisoners who may be less deserving than others nationally, especially in light of BOP's robust vaccination program. In this case, BOP has

denied McComb's request for compassionate release.

Obesity has been identified by the CDC as a condition that can make a person more likely to get severely ill from COVID-19. However, it is not readily apparent from the medical records McComb submitted that he suffers from obesity or any other medical conditions. But even if McComb could demonstrate that he currently suffers from a medical condition that places him at such an increased risk (such a condition submits, most of which date back to 2019), his motion would still be denied, because McComb has had access to the COVID-19 vaccine for months and, in May 2021, refused its administration. As courts around the country have concluded, this fact alone warrants rejection of McComb's request for release.

McComb's medical records show that he declined administration of the vaccine in May 2021. (See PageID 192-93).

> [A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred. . . . The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective . . . . A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*Broadfield*, 5 F.4th at 803; *see also, e.g.*, *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release."); *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) ("The glaring consensus among

9

district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release"); *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) ("Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, stating that "the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."); *United States v. Cooper*, 2021 WL 1629258, at *7

(E.D. Pa. Apr. 27, 2021) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine.").

It is possible that the scientific consensus may shift if, for example, the efficacy of the vaccines changes over time, or variants emerge that bypass the vaccines. But at present, absent such a "shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021); see also *United States v. Hill*, 2021 WL 1807285, at *2 (N.D. Ohio May 5, 2021) ("[I]f such scientific evidence later materializes, nothing will prevent Hill from filing another motion for compassionate release."); *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) ("Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."). Because McComb has been offered and refused the COVID-19 vaccine, he

11

cannot present an "extraordinary and compelling" reason warranting a sentencing reduction. Accordingly, his motion will be denied.

Finally, a defendant's demonstration of an "extraordinary and compelling reason" alone does not entitle him to compassionate release. This Court must consider the § 3553(a) factors as part of its analysis. See § 3582(c)(1)(A). This includes consideration of "the need to protect the public from further crimes of the defendant," § 3553(a)(2)(C). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020); *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

"[T]he nature and circumstances" of McComb's crimes and the history and characteristics of McComb establish public safety concerns. 18 U.S.C. § 3553(a)(1). McComb is incarcerated for illegal possession of a firearm while on escape status after being arrested on domestic violence and gun charges. While this conduct alone demonstrates that McComb poses a danger to the community, his criminal history enhances that conclusion. McComb's criminal conduct began as a juvenile with the commission of serious offenses like grand theft of a motor vehicle and robbery. As an adult, McComb accrued convictions for burglary, aggravated robbery (deadly weapon) (2), assault, abduction and escape. A review of the PSR in this case shows that McComb's previous offenses involved the use of firearms and physical violence against other persons.

Due to McComb's conduct and history, a reduction in sentence would not reflect the need to "protect the public from further crimes of the defendant" under § 3553(a)(2). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the

public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is improper here. *See* § 3582(c)(1)(A).

### III. CONCLUSION

McComb does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018. Doc. 36.

**DONE** and **ORDERED** in Dayton, Ohio on Tuesday, February 22, 2022.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE